IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MEDICAL MUTUAL OF OHIO, | ) | CASE NO.: 1:07 CV 2393 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| BARIX CLINICS OF OHIO, INC., | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Barix Clinics of Ohio, Inc. (ECF # 21) and a Cross-Motion for Summary Judgment filed by Plaintiff Medical Mutual of Ohio (ECF # 23). Also pending before the Court is Defendant's Motion to Strike Affidavits and Plaintiff's Reply Brief. (ECF # 30.)

**I. BACKGROUND**

On August 3, 2007, Plaintiff filed a three-count Complaint against Defendant. (ECF # 1.) In the Complaint, Plaintiff asserts that, on September 1, 2001, Plaintiff and Defendant entered into a "Hospital Agreement," wherein Defendant agreed to provide "Covered Hospital Services" to "Covered Persons" participating in Plaintiff's health insurance plans. (*Id.* at ¶¶ 5-6.) Plaintiff further alleges that, in exchange for providing such services, it agreed to reimburse Defendant pursuant to the terms, conditions and limitations set forth in the Hospital Agreement. (*Id.* at ¶ 7.)

Plaintiff has provided a detailed explanation of how it conducts its business, stating:

> [Plaintiff] insures the health of more than 1.6 million subscribers. [It] processes approximately 102,000 claims per day. Due to the volume of claims processed per day, and in order to ensure timely payment of claims, the claims are presumed to be valid, and if eligible for coverage, are paid with good faith reliance on the validity of the claims submitted by providers. Following payment, in order to verify the validity of claims, in the ordinary course of business, [Plaintiff] regularly conducts audits of providers, sometimes through outside firms such as [Healthcare Recovery,

> Inc.], to determine if claims were properly submitted and paid.

(ECF # 28 at 8.) Plaintiff further explains the billing and reimbursement process under the contract as follows:

> As a condition to payment from [Plaintiff], [Defendant] was required to timely submit written medical claims to [Plaintiff] using a UB-92 billing form. Pursuant to Article III of the Hospital Agreement, [Plaintiff] was authorized to conduct periodic audits of [Defendant's] records in order to determine, among other things, the accuracy of [Plaintiff's] reimbursements to [Defendant] pursuant to the terms of the Hospital Agreement, and whether [Plaintiff] was being overcharged by [Defendant].

(ECF # 1 at ¶¶ 8-9.) Plaintiff contends that, on April 30, 2005, through its authorized agent, it issued written notices to Defendant of its intent to perform an audit of Defendant's records pursuant to the terms of the Hospital Agreement. (*Id.* at ¶ 10.)

Plaintiff describes the audit as follows:

> Eventually, [Defendant] gave access to its books and records to [Plaintiff's] authorized agent, who was able to conduct and complete an audit of [Defendant's] records (the "Audit") as requested in the Audit Notices. During the Audit, [Defendant's] records relating to the claims identified in each Audit Notice were examined, in addition to [Plaintiff's] various payment levels and appropriateness of payments [Defendant] received from [Plaintiff]. As a result of the Audit, [Plaintiff] determined that [Defendant] had overcharged [Plaintiff] and [Plaintiff] had overpaid [Defendant] in the amount of $464,009.10.

(*Id.* at ¶¶ 14-16.) According to Plaintiff, in January 2006, Defendant, through its duly authorized representative, indicated in writing its agreement with the audit results on a claim-by-claim basis. (*Id.* at ¶ 18.) Plaintiff asserts that, pursuant to Section 4(e) of the Hospital Agreement, Plaintiff, in its sole discretion, is authorized to recover any amounts it determines to be overpayments made to Defendant. (*Id.* at ¶ 20.)

Based upon Defendant's alleged failure to reimburse Plaintiff for these purported overpayments, Plaintiff attempts to set forth three causes of action. In Count I of the Complaint,

Plaintiff alleges breach of contract. (*Id.* at ¶¶ 21-27.) Plaintiff asserts that, despite its repeated invoicing and demands for reimbursement, Defendant has, without justification, failed and/or refused to pay the $464,009.10, resulting in a breach of the Hospital Agreement. (*Id.* at ¶ 25.) In Count II of the Complaint, Plaintiff attempts to state a claim for unjust enrichment. (*Id.* at ¶¶ 28-31.) It states, "By virtue of the overpayments received by [Defendant] from [Plaintiff] for which [Defendant] has failed and/or refused to reimburse [Plaintiff], [Defendant] has benefited [sic] and been unjustly enriched at the expense of [Plaintiff] and to the detriment of [Plaintiff.]" (*Id.* at ¶ 29.) In Count III of the Complaint, Plaintiff alleges conversion, claiming that Defendant has engaged in the "wrongful and malicious conversion" of the overpayments, resulting in at least $464,009.10 in damages. (*Id.* at ¶ 36.)

On August 18, 2008, Defendant filed a Motion for Summary Judgment. (ECF # 21.) Defendant argues that, in Ohio, a health insurer's right to recover an alleged overpayment to a hospital is governed by statute. (*Id.* at 2.) More specifically, Defendant states that, under the provisions of Ohio Revised Code § 3901.388, a health insurer can recover an alleged overpayment only if it provides the hospital with the notice required by that statute. (*Id.*) Defendant claims that it is entitled to summary judgment because Plaintiff failed to provide it with the notice mandated by the statute. (*Id.*)

On the same day, Plaintiff also filed a Motion for Summary Judgment, asserting that there are no genuine issues of material fact for trial, and that it is entitled to judgment in its favor as a matter of law. (ECF # 23.) According to Plaintiff, no dispute exists that the parties entered into the Hospital Agreement and that the Agreement allowed Plaintiff to audit previous payments and receive reimbursement for overpayments. (*Id.* at 11.) Plaintiff alleges that Defendant

oversaw the audit and agreed with its findings, which conclusively established that it overbilled Plaintiff $464,009.10. (*Id.*) As such, Plaintiff requests that the Court enter summary judgment in its favor in the amount of $464,009.10, plus interest at the rate of 8% per annum from April 27, 2006, reasonable attorney's fees, and court costs. (*Id.*)

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d

222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the instant Motions must be decided.

## III. DISCUSSION

Ohio Revised Code § 3901.388, entitled, "When payments considered final; overpayment," provides the following, in pertinent part:

> (B) A third-party payer may recover the amount of any part of a payment that the third-party payer determines to be an overpayment if the recovery process is initiated not later than two years after the payment was made to the provider. The third-party payer shall inform the provider of its determination of overpayment by providing notice in accordance with division (C) of this section. The third-party payer shall give the provider an opportunity to appeal the determination. If the provider fails to respond to the notice sooner than thirty days after the notice is made, elects not to appeal the determination, or appeals the determination but the appeal is not upheld, the third-party payer may initiate recovery of the overpayment.
>
> * * *
>
> (C) The notice of overpayment a third-party payer is required to give a provider under division (B) of this section shall be made in writing and shall specify all of the following:
>
>> (1) The full name of the beneficiary who received the health care services for which overpayment was made;
>>
>> (2) The date or dates the services were provided;
>>
>> (3) The amount of the overpayment;
>>
>> (4) The claim number or other pertinent numbers;
>>
>> (5) A detailed explanation of basis for the third-party payer's determination of overpayment;
>>
>> (6) The method in which payment was made, including, for tracking purposes, the date of payment and, if applicable, the check number;
>>
>> (7) That the provider may appeal the third-party payer's determination of overpayment, if the provider responds to the notice within thirty days;

> (8) The method by which recovery of the overpayment would be made, if recovery proceeds under division (B) of this section.

*Id.* Defendant contends that an absolute condition precedent to Plaintiff's recovery is that it comply with the notice described in § 3901.388(C). (ECF # 21 at 4.) Defendant asserts that Plaintiff failed to comply with the statute, in that it did not provide a detailed explanation of the determination of overpayment. (*Id.* at 5.) Defendant also alleges that Plaintiff failed to comply with the statute in failing to provide "the payment method, payment dates and check numbers" related to the purported overpayments. (*Id.*) Based upon Plaintiff's alleged failure to comply with the notice requirements in § 3901.388(C), Defendant claims that it is entitled to summary judgment. (*Id.* at 8.)

In opposing Defendant's Motion for Summary Judgment, Plaintiff argues that Defendant "clings to a misplaced analysis of the Prompt Pay Act" as its sole defense to its request for reimbursement of overpayments. (ECF # 26 at 1.) Plaintiff describes the relevant statute statutory scheme as follows:

> The Prompt Pay Act appears in the Ohio Revised Code under the heading "Superintendant of Insurance." It specifically sets forth obligations for third-party payers and then indicates that providers can report violations of such obligations to the Superintendant of Insurance. After the superintendant's examination of information over a six-month period and if the superintendant determines a consistent pattern or practice of violation exists, the third-party payer must then receive proper notice which provides the opportunity for a hearing. At the conclusion of the process, the superintendant may impose fines against the errant third-party payer, order the payment of interest pursuant to R.C. § 3901.389, order the third-party payer to cease and desist the violations or impose certain remedies available for unfair or deceptive acts under R.C. § 3901.22.

(*Id.* at 2 (internal citations omitted).) Plaintiff insists that the statute upon which Defendant relies does not create a private right of action or an affirmative defense. (*Id.*)

In responding to Plaintiff's argument, Defendant argues that the issue of whether there is

a private right of action under the statute is "entirely irrelevant." (ECF # 27 at 3.) In making this argument, Defendant focuses on whether it could sue Plaintiff for the allegedly "brazen violations of the notice provisions" in the statute, not whether Plaintiff is able to pursue its claims outside of the statute. (*Id.*) By focusing on its own right to sue, Defendant refers to the case relied on by Plaintiff, namely *Strack v. Westfield Co.*, 33 Ohio App. 3d 336 (9th Dist. 1986), as inapplicable to this matter. (*Id.*) Defendant acknowledges that, in the *Strack* case, the court held that only the Superintendant of Insurance could seek relief under the statutory provisions at issue, and that a private right of action could not be implied. (*Id.*) And because it has not asserted a claim against Plaintiff, Defendant argues that this case is inapplicable. (*Id.*)

Defendant misses the point. Although Defendant denies using the statute as a defense and apparently finds it irrelevant whether a private cause of action exists — Defendant is using the statute in order to defend itself against Plaintiff's claims. In doing so, Defendant is undeniably arguing one of two things: (1) Plaintiff may only pursue its claims under the terms specified in the statute, thus the statute provides a scheme under which Plaintiff can pursue its claims against Defendant, thereby creating a private right of action, or (2) although the statute may not provide a private right of action, Defendant is still entitled to use it as a defense to Plaintiff's claims. The Court finds both of these arguments to be misplaced.

The *Strack* case and *In re Managed Care Litigation-Provider Track Cases*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), both cited by Plaintiff, are instructive. Those cases establish that, as the parties apparently agree, there is no private right of enforcement under the statute. The question then remains, why, if there is no such right, Plaintiff must, as Defendant argues, comply with the notice provisions therein in pursuing its claim? Similarly, if the statute does not provide

an affirmative defense, as Defendant concedes, then, again, why must Plaintiff comply with the statute's notice provisions in pursuing its claim? Because nowhere in its briefs does Defendant answer this question, the Court finds that it need not examine whether Plaintiff indeed complied with the statutory notice provisions. Having made that determination, and there being no additional defenses offered by Defendant, the sole issue remaining for determination is whether Plaintiff is entitled to summary judgment on its claims for $464,009.10.

In defending against Plaintiff's Motion, Defendant generally argues that Plaintiff has presented no evidence as to what constitutes an overpayment and has failed to properly authenticate the audits. Defendant likewise argues that the audit results are inadmissible hearsay and expert opinion testimony. The Court addresses Defendant's arguments in turn.

With respect to evidence as to what constitutes an overpayment, the Court turns to the affidavit of Kristine Steedman, a registered nurse employed by Healthcare Recovery, Inc., the company that conducted the audit on Plaintiff's behalf. (ECF # 28, Ex. 6.) In her affidavit, Kristine Steedman states that, "[t]o perform the audit, [she] reviewed the medical records for each patient with bills submitted by [Defendant] to [Plaintiff], and, applying routine standards of nursing care, [she] indicated whether [Defendant] overcharged [Plaintiff]." (*Id.* at ¶ 6.) Further, the affidavit of Shelley Wernholm, a Financial Review and Recovery Department Manager for Plaintiff, states that, upon receipt of the audit findings, a staff member reviewed and readjudicated the claims in accordance with the findings, resulting in the determination that the amount of $464,009.10 was owed. (*Id.*, Ex. 7 at ¶¶ 5-6.) The Court finds that this is indeed

evidence of what constitutes an overpayment in these circumstances.[1]

The Court now addresses Defendant's claim that Plaintiff has failed to properly authenticate the audits. In her affidavit, Kristine Steedman states:

> The documents identified in the Deposition of Emma Jean Lyon as Exhibits 4 through 10 are the audit reports which reflected my findings. The first page of each report is a form that is generated by our computer system based upon the audit findings and contains no additional information not found in the audit findings summarized therein. This form was not presented to [Defendant], but was sent directly to [Plaintiff]. With the exception of each cover sheet summarizing the claim, I presented the remainder of each report which included the total overcharge to the President of [Defendant], Emma Lyon, for her review. After her review, she checked the box indicating that she agreed with my findings.

(*Id.*, Ex. 6 at ¶ 5.) Thus, whether or not Emma Lyon could authenticate the audits, the Court finds that the affidavit of Kristine Steedman sufficiently does so.

As to Defendant's argument that the audit results are hearsay and inadmissible expert opinion testimony, the Court again finds Defendant's argument to be without merit. As stated by Plaintiff, federal courts have held that "audit results are admissible hearsay under the business-records exception of Rule 803(6), which permits the admission of records of regularly conducted business activity even when those records contain out-of-court statements offered for their truth." (*Id.* at 7.) Kristine Steedman's affidavit makes clear that Healthcare Recovery, Inc. is in

---

[1] Defendant has moved to strike the affidavits of Ms. Steedman and Ms. Wernholm, as well as Plaintiff's Reply Brief. (ECF # 30.) In its Motion, Defendant argues that Plaintiff's "September 29, 2008 filings were not proper replies," in that Plaintiff has engaged in "sandbagging." (*Id.* at 6-7.) Defendant further argues that Ms. Steedman has improperly offered an expert opinion, rather than a lay opinion, and, as such, her affidavit must be stricken. (*Id.* at 8-12.) The Court finds these arguments to be without merit. The record reveals that Plaintiff filed the affidavits at issue in response to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Further, as the Court sets forth herein, Ms. Steedman's opinions are properly characterized as lay testimony, given that they are the facts as Ms. Steedman personally perceived them while conducting the audit on Plaintiff's behalf. Based on the foregoing, and for the reasons cited herein, Defendant's Motion to Strike is DENIED.

the business of conducting audits of health care providers to ensure compliance with applicable billing standards in the health care field. (*Id.*, Ex. 6 at ¶ 3.) She further stated that Healthcare Recovery, Inc. produces audit reports in the ordinary course of its business, and that, in accordance with normal business practices, Healthcare Recovery, Inc. delivered all records relating to the audit, including the audit report summary sheet and the audit reports signed by Ms. Lyon, to Plaintiff. (*Id.* at ¶¶ 3, 7.) As such, the finds the business records exception to be applicable.

Next, the Court turns to Defendant's assertion that the audit results are Ms. Steedman's opinions of what amounts were "overbilled," and that such evidence constitutes inadmissible expert testimony. This Court disagrees. Specifically, the Court finds that Kristine Steedman's opinions are more properly characterized as lay testimony, rather than expert opinion testimony. This is due to the fact that the audit results are the facts as Ms. Steedman personally perceived them while conducting the audit on Plaintiff's behalf.

In evaluating the merits of Plaintiff's Motion for Summary Judgment, and having carefully reviewed Defendant's response thereto, the Court finds that Defendant has failed to present any evidence even suggesting that there is genuine issue of material fact for trial. That is, Defendant fails to direct this Court to any evidence undermining the accuracy of the audit, and does not debate the validity of the contract or Plaintiff's compliance therewith.

The sole shred of evidence Defendant points to is the deposition testimony of its former President, Emma Lyons, wherein she indicated that she may have disagreed with Ms. Steedman's interpretation of what was documented and what was an acceptable charge. (ECF # 25 at 8-9.) Defendant states, "her testimony clearly indicates that Ms. Lyon disputed Ms.

Steedman's conclusions that overbillings had occurred, and that dispute – on one of the core material facts in this case – prohibits a summary judgment." (*Id*. at 10.) Defendant's evidence on this point, namely the testimony of Ms. Lyons, is ambiguous at best. Had Defendant pointed to evidence in the record providing a factual basis for this purported disagreement, rather than just alleging a general disagreement with the conclusion, perhaps summary judgment would have been precluded. In the absence of such evidence, however, Defendant fails to demonstrate a genuine dispute of material fact for trial and this Court has no alternative but to grant Plaintiff's Motion.

Article II of the Hospital Agreement is entitled, "Payments for Covered Services." (ECF # 23, Ex. 3 at 2-3.) Subsection 3(b) of that Article, entitled "Determination of Coverage" provides:

> [Plaintiff's] determination that the individual receiving services, supplies, products or accommodations from [Defendant] is a Covered Person and that such services, supplies, products and accommodations are Covered Hospital Services. [Defendant] agrees to accept [Plaintiff's] determination of the foregoing, whether such determination is rendered before, at the time of, or after the provision of, or payment for such services, supplies, products, and accommodations to such person by [Defendant].

(*Id.* at 3.) Subsection 4(e) of the same Article concerns overpayments and provides:

> If [Plaintiff] reimburses [Defendant] for services, supplies, products or accommodations that [Plaintiff] determines are not Covered Hospital Services, or for the provision of Covered Hospital Services to an individual [Plaintiff] determines is not a Covered Person, or [Plaintiff] has made a payment to [Defendant] for the provision of Covered Hospital services more than once, or made an overpayment to [Defendant], or incorrectly made payments due to coding or billing errors, or otherwise incorrectly or inadvertently made a payment to [Defendant], or made a payment to [Defendant] for which [Defendant] has no entitlement as [Plaintiff] may determine, on an individual or aggregate basis, [Plaintiff] may at its sole option and discretion, demand return of such payment or overpayment from [Defendant] or set off the amount of such payment or overpayment against any amounts owed to [Defendant] by [Plaintiff]. [Plaintiff] will limit audits and adjustments as may apply

to this provision to a period of two(2) years after the date of Claim payment.

(*Id.* at 5-6.) In this case, Plaintiff filed the instant lawsuit based upon the results of an audit conducted pursuant to these provisions.

Defendant asserts that Plaintiff's claim fails because, although the contract allows for Plaintiff to demand return of overpayments, it does not actually require Defendant to return the money. (ECF # 25 at 11-13.) According to Defendant, "unlike § 3(b), which obligates [Defendant] to accept [Plaintiff's] coverage determinations, there is nothing in § 4(e) which obligates it to accept [Plaintiff's] overpayment determinations." (*Id.* at 12.) Defendant's position, however, ignores basic principals of contract interpretation.

"[I]t is a well-settled principle of contract interpretation that a contract must be interpreted when possible as a whole in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions." *Local 377 v. Humility of Mary Health Partners*, 296 F. Supp. 2d 851, 859 (N.D. Ohio 2003) (citing *International Union v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983)). To adopt Defendant's position that, although the contract allows for Plaintiff to demand return of overpayments, it does not actually require Defendant to return the money, would render the provision allowing for the audit and demand of overpayments meaningless. That is, Article II, subsection 4(e) would be mere surplusage to the Hospital Agreement, serving no purpose whatsoever. Because this Court is charged with giving the terms of the contract their plain and ordinary meaning, it simply cannot adopt Defendant's interpretation. The Court finds that the contract indeed required Defendant to reimburse Plaintiff for overpayment, and, in this case, Defendant failed to do so. Thus, the Court finds Defendant to be in breach of the Hospital Agreement.

Here, in opposing Plaintiff's Motion for Summary Judgment, and in support of its own Motion for Summary Judgment, Defendant argued that Plaintiff's alleged failure to comply with statutory notice requirements was fatal to Plaintiff's request for recovery. As the Court found above, however, the statute upon which Plaintiff relies is inapplicable to this matter. Defendant points to no case law, and the Court is unaware of any, that supports Defendant's claim in this regard. Placing that issue aside, Defendant then attempts to attack Plaintiff's evidence, such arguments that the Court, again, finds to be without merit. Although this Court finds the grant of Summary Judgment to Plaintiff in this case to be an extraordinary remedy, Defendant simply offers no evidence upon which this Court can find a genuine issue of material fact for trial. Defendant has not, for example, submitted its own findings as to why the audit results were inaccurate. In fact, it does not provide evidence disputing even a single claim in which Plaintiff alleges overpayment. In the absence of any such evidence, and for the reasons set forth above, the Court finds Plaintiff's Motion for Summary Judgment to be meritorious. Having made such a determination, the Court need not examine Plaintiff's claims for unjust enrichment and conversion.

## IV. CONCLUSION

Based upon the foregoing, Defendant's Motion to Strike (ECF # 30) is DENIED, Defendant's Motion for Summary Judgment (ECF # 21) is DENIED, and Plaintiff's Cross-Motion for Summary Judgment is GRANTED (ECF # 23). Judgment in the amount of $464,009.10, plus interest beginning April 27, 2006, shall be entered in favor of Plaintiff and against Defendant. The Court shall not award attorney fees in this case, and Defendant shall bear all costs. This case is TERMINATED.

IT IS SO ORDERED.

*s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: October 8, 2008